IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PATRICE BRACEY               :         CIVIL ACTION
                             :
            v.               :
                             :
SETH BETANCOURT              :         NO. 20-6205

MEMORANDUM

Bartle, J.                                   November 3, 2021

        Plaintiff Patrice Bracey brings this action under
42 U.S.C. § 1983 against defendant Seth Betancourt, a trooper
with the Pennsylvania State Police, in his individual capacity,
for alleged violations of her rights under the United States
Constitution.  Her complaint also contains state law claims.
Specifically, plaintiff sues for false detention, false arrest,
false imprisonment, and malicious prosecution in violation of
her Fourth Amendment rights and for malicious prosecution and
intentional infliction of emotional distress in violation of
state law.  All claims stem from her arrest and subsequent
detention pursuant to a warrant obtained by defendant.  Before
the court is the motion of defendant for summary judgment on the
ground that no constitutional violations occurred and that if
any did occur he is entitled to qualified immunity.

I

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A dispute is genuine if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986).  We view the facts and draw all inferences in favor of the nonmoving party.  See In re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004).

Summary judgment is granted when there is insufficient record evidence for a reasonable factfinder to find for the nonmovant.  See Anderson, 477 U.S. at 252.  "The mere existence of a scintilla of evidence in support of the [nonmoving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]."  Id.  In addition, Rule 56(e)(2) provides "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for the purposes of the motion."  Fed. R. Civ. P. 56(e)(2).

II

The following facts are undisputed.  On December 13,
2018, defendant responded to a report of a missing vehicle at an
Audi dealership in Chadds Ford Township, Delaware County,
Pennsylvania.  On that date, Audi employees during an inventory
check noticed the absence of a gray Audi Q7 worth $32,000.
Defendant viewed surveillance footage at Audi and interviewed
its employees.  One employee recalled showing a man some cars
the evening of December 11, 2018 before the man went outside to
smoke.  He did not return.  The employee did not think anything
of it at the time because the man had mentioned that someone
would be picking him up.

Defendant testified at his deposition in this case
that Audi's surveillance footage showed a man, later identified
as Leon Hall, approaching a car and placing a registration plate
on it before driving it off the lot on December 11, 2018 around
7:25 p.m.  The Audi employee identified the man in the
surveillance footage as the one to whom she had shown cars that
night.  The footage also displayed the man walking up to the
dealership from the direction of a nearby Wawa gas station and
convenience store.

Defendant subsequently canvassed the area for
surveillance footage, including from the Wawa.  Upon viewing the
Wawa video tape, defendant recognized the man from the Audi

surveillance footage and saw him arrive at the Wawa with a
woman, subsequently identified as plaintiff.

The Wawa surveillance footage showed plaintiff driving
up to the Wawa with Hall at 5:46 p.m. on December 11, 2018.
Both plaintiff and Hall exited the car and entered the Wawa.
Hall was wearing glasses and a backpack.  While in the store he
put on a black winter hat.  The video does not capture the
entire store, but plaintiff and Hall appear to be walking around
the store, talking to an employee, talking with each other,
looking at their respective phones, laughing, and kissing.

Around 5:58 p.m., plaintiff purchased a drink at the
register.  After more talking, plaintiff and Hall exited the
store around 6:00 p.m. and talked at the driver's side of
plaintiff's car.  After what appeared to be them saying goodbye,
Hall came back and waited in the vestibule area of the Wawa
between the exterior and interior doors.  He stopped a customer
coming into the Wawa and appeared to ask him a question.  The
customer gestured in a direction outside the store.  Hall
remained in the vestibule area for a minute or so longer during
which plaintiff drove away by herself at 6:05 p.m.

Defendant thereafter obtained a search warrant for
Visa debit card records because plaintiff had used her card to
purchase a drink.  He obtained her name from the debit card
records and thereafter searched plaintiff on social media.

4

After learning she lived in Maryland, he searched the Maryland
Department of Transportation records.  Based on her social media
and driver's license photographs, defendant was able positively
to identify plaintiff as the woman in the Wawa surveillance
footage.  Defendant identified Hall based on pictures plaintiff
posted on social media with him.  Both plaintiff and Hall
identified themselves on their social media pages as in a
relationship.

While defendant was investigating the Audi car theft,
he learned of a similar incident involving a theft of a Range
Rover from a nearby dealership.  On December 15, 2018, defendant
reached out to the officer investigating that theft, Detective
Russell Weaverling of the Westtown-East Goshen Police
Department.  Defendant recognized the man in the photographs
from surveillance footage that Weaverling provided as the same
man who had stolen the Audi Q7.

After identifying the names and identities of
plaintiff and Hall, defendant took a picture of Hall to the
salesperson at Audi on December 31, 2018 who positively
identified Hall in a photo lineup as the man who stole the
Audi Q7.  No one at Audi had any contact with plaintiff or
identified her in connection with the car theft.

On January 3, 2019, defendant submitted an affidavit
of probable cause to a Delaware County magisterial district

judge to obtain an arrest warrant for plaintiff.  In the
affidavit defendant described Hall's actions at the Audi
dealership on December 11, 2018 based on the surveillance
footage and witness statement of the Audi salesperson.  He
recounted that Hall went into the bathroom in the Wawa and
afterwards was wearing glasses and a black winter hat.  He noted
that after plaintiff drove away "[t]he B-N/M is then seen
walking towards to [sic] the Audi dealership,"[1] which was next to
the Wawa.  Defendant detailed how he identified Hall and
plaintiff based on plaintiff's debit card records and social
media as well as the Audi salesperson's positive identification
of Hall in a photo lineup.

Defendant further stated in his affidavit for the
arrest warrant that "[u]pon looking at the [social media]
results I immediately recognized a photo of BRACEY as the B-N/F
involved in the theft of gray Audi Q7."[2]  He added that when he
checked plaintiff's records with the Maryland Department of
Transportation, "I again immediately recognized her as the
female involved in the theft."  Defendant concluded that "I
believe the aforementioned information to be true and correct

---

1.   Defendant explained in his deposition that his notation
"B-N/M" means Black non-Hispanic male.

2.   Defendant explained that "B-N/F" stands for Black
non-Hispanic female.

and respectfully request that a warrant be issued for the arrest of BRACEY for Theft by Unlawful Taking and Disposition, Receiving Stolen Property and Criminal Conspiracy." As a result of defendant's affidavit, the magisterial district judge issued an arrest warrant for plaintiff that same day, January 3, 2019, for theft by unlawful taking or disposition, receiving stolen property, and criminal conspiracy under Pennsylvania law.

Pursuant to this Delaware County arrest warrant, the Baltimore County Regional Auto Theft Task Force subsequently arrested plaintiff on January 7, 2019 in Maryland where she lived.

That same day, January 7, Weaverling traveled to Maryland with his colleague, Detective Ragni, and interviewed plaintiff on defendant's behalf since defendant did not have permission to travel outside of Pennsylvania. Plaintiff told Weaverling during that interview that she had taken Hall to the Wawa. She believed he was legitimately buying a car from a dealer's auction to sell and that she later helped him sell a car to her friend. During the interview with Weaverling, plaintiff consented to a search of her phone. Weaverling testified that the search of her text messages corroborated plaintiff's version of events and that the context of her conversations showed that plaintiff did not know the Audi Q7 was stolen.

Plaintiff also advised the police at the time of her arrest where they could find Hall.  He was arrested later that day.

According to Weaverling, he updated defendant later that day, January 7, by phone or e-mail about his interview with plaintiff after her arrest.  In the following days after the interview with plaintiff, Weaverling hand-delivered copies of his report and his conclusions from that interview to defendant's barracks.  Weaverling thinks an audio file of his interview with plaintiff was also included.

Defendant transported plaintiff to Pennsylvania from Maryland on January 28, 2019 for her arraignment and bail hearing.  Bail was set at $150,000.  Plaintiff could not post bail and therefore remained in jail in Pennsylvania until she was released on her own recognizance on February 28, 2019. Plaintiff had a preliminary hearing in Pennsylvania on April 25, 2019.  That day the charges against plaintiff were dropped after defendant asked the Delaware County deputy district attorney to do so.  Defendant agreed that Weaverling's interview with plaintiff corroborated her version of events that she had no knowledge of the vehicle theft.

### III

Defendant, as noted above, argues he is entitled to summary judgment on plaintiff's federal claims based on

qualified immunity.  Defendant maintains that he did not commit
a constitutional violation and even if he did so, the
constitutional right was not clearly established at the time.

The doctrine of qualified immunity shields government
officials from monetary damages unless their conduct violates
clearly established constitutional or statutory rights of which
a reasonable person would have known.  Pearson v. Callahan, 555
U.S. 223, 231 (2009); see also Saucier v. Katz, 533 U.S. 194,
201-02 (2001).  Thus, there is a two-pronged inquiry.  In the
present posture of the case, a court must determine if there is
evidence of a violation of a constitutional right and if so
whether the constitutional right at issue was clearly
established at the time.  Saucier, 533 U.S. at 201.  The inquiry
into whether a right is clearly established "must be undertaken
in light of the case's specific context, not as a broad general
proposition."  Id. at 195.  Courts may address either prong of
the qualified immunity analysis first.  Pearson, 555 U.S. at
236.  Qualified immunity is an objective question to be decided
by the court as a matter of law.  Curley v. Klem, 499 F.3d 199,
210 (3d Cir. 2007).

When a defendant raises a defense of qualified
immunity at summary judgment, the plaintiff bears the initial
burden of coming forward with evidence that the conduct of
defendant violated a clearly established constitutional or

9

statutory right.  Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997).  If the plaintiff satisfies this burden, the defendant must then show that there is no genuine dispute of a material fact as to the objective reasonableness of his actions to succeed at summary judgment.  Id.  The Supreme Court has made clear "that it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present."  Anderson v. Creighton, 483 U.S. 635, 641 (1987).  Immunity therefore depends on whether an officer's actions were objectively reasonable.  Id.

IV

The court first turns to plaintiff's overlapping constitutional claims under the Fourth Amendment for false detention, false arrest, false imprisonment, and malicious prosecution.  Under § 1983,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  It is undisputed that defendant, as a state trooper who was performing his duties at all relevant times, is a state actor for purposes of § 1983.

Plaintiff asserts she was unlawfully seized and thus deprived of her rights under the Fourth Amendment to the United States Constitution which provides in relevant part "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation."[3]  U.S. Const. amend. IV.  False arrest and false detention are both "species" of false imprisonment which is detention without legal process.  See Wallace v. Kato, 549 U.S. 384, 388-89 (2007).  Once a person is held pursuant to legal process, any subsequent unlawful detention constitutes part of a malicious prosecution claim, as discussed below.  Id. at 390.

To prove a claim for false imprisonment under the Fourth Amendment, a plaintiff must establish that there was an arrest or restraint without probable cause.  James v. City of Wilkes-Barre, 700 F.3d 675, 680 (3d Cir. 2012); see also Brockington v. City of Phila., 354 F. Supp. 2d 563, 570 n.8 (E.D. Pa. 2005).  It is undisputed that plaintiff was seized, that is was arrested.  Thus the court must evaluate whether there is evidence in the record that defendant did not have probable cause to arrest plaintiff.

---

3.   The due process clause of the Fourteenth Amendment extends the protections of the Fourth Amendment to the states.  See Mapp v. Ohio, 367 U.S. 643, 655 (1961).

In making this determination, the court must review the totality of the circumstances as viewed by an objectively reasonable police officer.  Maryland v. Pringle, 540 U.S. 366, 371 (2003).  Probable cause requires "more than mere suspicion; however, it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt."  Orsatti v. N.J. State Police, 71 F.3d 480, 482-83 (3d Cir. 1995).

Here an arrest warrant was issued.  While a court generally gives deference to the decision of a neutral magistrate to authorize the warrant, such deference is not absolute.  The court must still ensure that there was a substantial basis for concluding that probable cause existed. See Illinois v. Gates, 462 U.S. 213, 237-39 (1983).  A warrant based on an affidavit with wholly conclusory statements that lack a basis for finding probable cause will not survive.  Id. at 239.

A plaintiff may also challenge the validity of a warrant based on a false supporting affidavit by satisfying the test set forth by the Supreme Court in Franks v. Delaware, 438 U.S. 154 (1978).  See Sherwood, 113 F.3d at 399.  Under Franks and its progeny, the court must decide whether the plaintiff has evidence that "(1) that the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for

a warrant; and (2) that such statements or omissions are
material, or necessary, to the finding of probable cause."  Id.

Defendant's affidavit submitted in support of the
warrant for plaintiff's arrest contains no facts supporting
plaintiff's culpability for the crimes in issue.  Defendant
merely swore that plaintiff drove with Hall to the Wawa where
they spoke to each other, looked at their phones, kissed each
other, and plaintiff bought a drink at approximately 5:59 p.m.
before they left the store together and spoke at plaintiff's car
after which she drove away by herself.  While defendant may have
had his suspicions about her, mere suspicion is not enough.  See
Orsatti, 71 F.3d at 482.  Person A's mere presence with person B
more than an hour before but not at the time that person B
commits a theft without more does not constitute probable cause
that person A was involved in the theft.

There is also evidence that defendant's affidavit
contained materially false statements.  He falsely stated that
he "immediately recognized a photo of BRACEY as the B-N/F
involved in the theft of gray Audi Q7" when viewing plaintiff's
social media.  He also falsely stated that when he saw the
Maryland Department of Transportation records he "again
immediately recognized her as the female involved in the theft."
On the contrary, he had absolutely no information that she had
any involvement in any theft.

13

Defendant had not seen plaintiff on any surveillance footage at the Audi dealership and had no statement of anyone or any other information that she participated in stealing the car. Rather, the only facts he knew about plaintiff at that time were that she had driven with Hall to the Wawa and that she had bought a drink there before driving away by herself without Hall an hour and a half before Hall is seen on camera stealing the Audi Q7.

Defendant makes other material misstatements in his affidavit.  He stated that plaintiff's Visa card was "used moments prior to the vehicle theft by the B-N/M."  However, plaintiff used her debit card at the Wawa at 5:58 p.m., and, according to defendant, Hall was captured on the Audi surveillance footage driving the Audi Q7 away at approximately 7:25 p.m.  The lapse of nearly an hour and a half is hardly moments later.

Defendant further stated that Hall and plaintiff entered the Wawa and headed "directly towards the bathroom area" and that after coming back from the bathroom Hall "is observed wearing glasses and a black winter hat" to imply that Hall had changed his appearance.  The bathroom is not captured on the Wawa surveillance footage.  Hall and plaintiff merely walk out of view of the camera into the rest of the store beyond the

counter.  In addition, Hall is clearly captured on the
surveillance footage wearing glasses as he enters the Wawa.

Removing these false statements does not save the
affidavit.  See Sherwood, 113 F.3d at 399.  Plaintiff has
provided more than sufficient evidence that defendant lacked
probable cause to arrest her.  No reasonable officer would have
believed that there was probable cause that plaintiff had
participated in a crime or was about to do so based solely on
her relationship to Hall and her actions at the Wawa.

Defendant cannot rely on the issuance of an arrest
warrant to validate plaintiff's arrest.  The Supreme Court has
explained that when "the warrant application is so lacking in
indicia of probable cause as to render official belief in its
existence unreasonable" the "shield of immunity" will be lost.
Malley v. Briggs, 475 U.S. 335, 344-45 (1986).  An officer can
be held liable in a § 1983 action even if the warrant is
approved by a magistrate since "it is possible that a
magistrate, working under docket pressures, will fail to perform
as a magistrate should."  Id. at 345.

Defendant's affidavit is totally lacking in any
indicia of probable cause to arrest plaintiff for theft by
unlawful taking, receipt of stolen property, or criminal
conspiracy based solely on her actions in the Wawa.  It was not
objectively reasonable for defendant to believe probable cause

15

existed for plaintiff's arrest for these crimes based on the
facts and circumstances known to him when he obtained the arrest
warrant.  The arrest of plaintiff was not predicated on exigent
circumstances requiring split-second decisions.  Rather,
defendant had plaintiff arrested as a result of a weeks-long
investigation despite having no information after that
investigation that she had committed any of the crimes in the
arrest warrant.

Plaintiff further claims defendant maliciously
prosecuted her in violation of her constitutional rights.  In a
§ 1983 malicious prosecution claim under the Fourth Amendment, a
plaintiff at this stage of the case must come forward with
evidence that:  (1) "the defendants initiated a criminal
proceeding"; (2) "the criminal proceeding ended in the
plaintiff's favor"; (3) "the proceeding was initiated without
probable cause"; (4) "the defendants acted maliciously or for a
purpose other than bringing the plaintiff to justice"; and
(5) "the plaintiff suffered a deprivation of liberty consistent
with the concept of seizure as a consequence of a legal
proceeding."  DiBella v. Borough of Beachwood, 407 F.3d 599, 601
(3d Cir. 2005).

"Actual malice in the context of malicious prosecution
is defined as either ill will in the sense of spite, lack of
belief by the actor himself in the propriety of the prosecution,

16

or its use for an extraneous improper purpose." Lawson v. City
of Coatesville, 42 F. Supp. 3d 664, 674 n.8 (E.D. Pa. 2014)
(quoting Lee v. Mihalich, 847 F.2d 66, 70 (3d Cir. 1988)).  In
addition, "[m]alice may be inferred from the absence of probable
cause." Id. (citing Lippay v. Christos, 996 F.2d 1490, 1502 (3d
Cir. 1993)).

Plaintiff has come forward with evidence that has met
all the criteria for a malicious prosecution claim.  Defendant
initiated a criminal proceeding against her which ended in her
favor when the charges were dropped.  She suffered a deprivation
of liberty when she was held in jail from January until February
28, 2019 as a consequence of a legal proceeding.  As previously
discussed, plaintiff has pointed to sufficient evidence that her
arrest and the subsequent charges against her were made without
probable cause.

There is also evidence in the record that defendant
acted with malice by including materially false information in
his affidavit.  Defendant made no effort to interview or
question plaintiff or to conduct a further investigation about
her reason for dropping Hall off at the Wawa before submitting
his affidavit and having her arrested.

What he learned from Weaverling in early January all
points to her innocence.  Yet he failed to present this
exculpatory evidence promptly to the District Attorney's office

so that she could be released from jail.  Plaintiff was arrested on January 7, 2019, and although Detective Weaverling corroborated her version of events and ignorance of Hall's theft that same day and communicated that information to defendant that same week, defendant did not inform the District Attorney's office that he wished to withdraw the charges against plaintiff until April 25, 2019.  In his email seeking to withdraw the charges, defendant stated that he came to this conclusion after speaking with Weaverling and reading his narrative.  Defendant had this information as early as January 7, 2019 or shortly thereafter and before he escorted plaintiff to her bail hearing on January 28, 2019 when bail was set at $150,000.  Plaintiff languished in jail for almost two months from January 7, 2019 until February 28, 2019 unable to post bail.  Finally, defendant unnecessarily and repeatedly refers to plaintiff's race throughout his affidavit despite the fact that he knew her name at the time of the affidavit.

Plaintiff has met her burden of presenting evidence that a constitutional violation occurred regarding the malicious prosecution of her case.  It was not objectively reasonable for defendant to think he had probable cause to have plaintiff arrested based on the information known to him at the time and to fail to seek the withdrawal of the charges against her for almost four months after she was arrested.

V

This does not end the court's inquiry.  Qualified
immunity, as stated above, will shield a defendant from
liability even if the defendant's conduct violated a
constitutional right if that right was not clearly established.
See Saucier, 533 U.S. at 201.  However, our Court of Appeals
ruled long before the arrest in question here that the right to
be free from arrest was clearly established unless there exists
probable cause.  Orsatti, 71 F.3d at 483.  This is not a close
case.  Defendant did not possess any facts reasonably to believe
plaintiff stole a vehicle, received stolen property, or
conspired to do so.  It was also clearly established at the time
of plaintiff's arrest "that a violation of common law malicious
prosecution along with 'some deprivation of liberty consistent
with the concept of "seizure"' constitutes a violation of the
constitution."  Brockington, 354 F. Supp. 2d at 569 (quoting
Gallo v. City of Phila., 161 F.3d 217, 222 (3d Cir. 1998)).

VI

Plaintiff has pointed to more than sufficient evidence
of clearly established constitutional violations under the
Fourth Amendment.  Defendant has failed to establish that he is
entitled to qualified immunity as a matter of law.  Accordingly,
defendant's motion for summary judgment on plaintiff's federal
constitutional claims brought under § 1983 will be denied.

VII

In addition, defendant moves for summary judgment on
plaintiff's state law claims for malicious prosecution and
intentional infliction of emotional distress.  He relies on the
doctrine of sovereign immunity as codified in the Pennsylvania
Sovereign Immunity Act, 42 Pa. Cons. Stat. §§ 8521 et seq.  It
provides for immunity from suit on state statutory and common
law claims for a Commonwealth employee acting within the scope
of his office or employment except in ten narrow instances of
negligence.  None of those exceptions applies in this case.[4]  See
1 Pa. Cons. Stat. § 2310; 42 Pa. Cons. Stat. § 8522.  Unlike a
municipal officer who is not immune from suit under the
Political Subdivision Tort Claims Act for harm caused by willful
misconduct, 42 Pa. Cons. Stat. § 8550, a state officer is
shielded from liability for intentional torts committed while
acting within the scope of his duties.  See 42 Pa. Cons. Stat.
§ 8522; see also Pickering v. Sacavage, 642 A.2d 555, 560 (Pa.
Commw. Ct. 1994).

Plaintiff's state law claims are for intentional torts
that arise from defendant's actions in securing an arrest

---

4.   Those categories concern:  vehicle liability;
medical-professional liability; care, custody or control of
personal property; Commonwealth real estate, highways and
sidewalks; potholes and other dangerous conditions; care,
custody or control of animals; liquor store sales; National
Guard activities; toxoids and vaccines; and sexual abuse.

warrant for her and her subsequent arrest and time in jail before the charges were dropped.  Defendant's challenged actions were clearly undertaken within the scope of his duties as a state trooper.  He was on duty and acting as such when he investigated the vehicle theft, signed the affidavit of probable cause for an arrest warrant, and continued his investigation after having plaintiff arrested.  These intentional actions do not fall within the exceptions provided for in 42 Pa. Cons. Stat. § 8522.  Therefore, summary judgment will be granted in favor of defendant as to plaintiff's state law claims pursuant to state sovereign immunity.